# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY, | ) | CHAPTER 7 |
| SERVICES, LLC. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Robert Trauner, as Chapter 7 | ) | |
| Trustee for the Estate of Carter | ) | |
| Brothers Security Services, LLC, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS

NOW COMES Robert Trauner, Trustee in the above-captioned Chapter 7 proceeding (the

"Trustee"), by and through his counsel of record and brings this Complaint to Avoid and

Recover Transfers (the "Complaint") made to and against the above styled defendant Reliance

Standard  Life Insurance Company ("Defendant"), as follows:

**JURISDICTION AND VENUE**

1.

This Adversary Proceeding arises out of and is related to the above-styled case pending

before this United States Bankruptcy Court; therefore, this Court has jurisdiction pursuant to 28

U.S.C. §§157 and 1334.

2.

This Adversary Proceeding is brought pursuant to 11 U.S.C. §§ 510, 548, 544 and 550 of

the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of

Bankruptcy Procedure.

3.

This Complaint is a core proceeding pursuant to 28 U.S.C. §157.

4.

Pursuant to an Order styled In re Jurisdiction of the United States Bankruptcy Court for

the Northern District of Georgia, dated July 12, 1984, entered by the United States District Court

for the Northern District of Georgia, pursuant to 28 U.S.C. §157(a), this Adversary Proceeding is

referred to this Court.

5.

Venue of this Adversary Proceeding in this district is proper pursuant to 28 U.S.C.

§1409(a).

**THE PARTIES**

6.

Carter Brothers Security Services, LLC, ("CBSS") commenced a voluntary Chapter 7

proceeding on or about July 10, 2018.  Robert Trauner is the duly appointed Chapter 7 Trustee of

CBSS (the "CBSS Trustee").

7.

Reliance Standard  Life Insurance Company, is a corporation registered with Secretary of

State at 2001 Market Street Suite 1500, Philadelphia, PA 19103 and may be served by

Registered Agent located at Attn: Dale Morris 1201 Peachtree Street NE, Atlanta, GA 30361 and

is subject to the jurisdiction of this Court.

8.

Debtor Carter Brothers Security Services, LLC ("CBSS") is owned by 99% by John

Carter, with the other 1% by Chris Carter, and was under the control of John Carter at all

relevant times. Plaintiff's complaint alleges a pattern and practice by Debtor, controlled by John

Carter, whereby it paid debts owed by other related entities.  Plaintiff further alleges that the

Debtor's principal, John Carter, used company assets to pay his own personal obligations, to pay

the debts of his other companies and to support payments to himself that would otherwise not

have been possible, given the fact that Debtor was insolvent at all relevant times herein.

9.

John Carter ran these businesses in a way that was certain to damage the creditors of

Debtor's estate and ultimately with the intent to benefit himself and his other businesses at the

expense of the legitimate creditors of this estate.  He did so with actual knowledge that the

companies were insolvent and in his words with "fully depleted" capital and "in a near-hopeless

debt spiral."  He did so in a manner that ensured the Debtor was driven further into insolvency,

impairing the Debtors' available cash, draining the Debtor of working capital and resulting in a

range of damages from slow pay to eventual inability to pay creditors at all.  Elaborating on this,

the Trustee includes the following specific allegations:

- Mr. Carter used the monies and other assets of Debtor to shore up the financial condition of his other companies, causing them to pledge their own individual assets for his other businesses, such as MGA Holdings.  The Debtor's available funds were utilized to benefit Mr. Carter's other businesses rather than in servicing the Debtor's own debt.  It is worthy of note here, all of the payments by CBSS to Defendant within the two years of the bankruptcy petition date were made after CBSS had ceased operations.

- He caused the Debtor to pay his own financial obligations and to support a lavish lifestyle of luxury automobiles, country club memberships, and golf club memberships to name a few examples.  Mr. Carter had no employment agreement with Debtor and provided himself with the trappings of wealth without regard to the Debtor's financial condition or ability to pay, continuing to fund his own expenses out of the company coffers even after CBSS ceased operations.

- Mr. Carter caused the Debtor to pay out management fees to Mr. Carter's other wholly owned businesses totaling millions of dollars over the four years preceding the CBSS case filing.

■  Mr. Carter caused the Debtor to fund legal fees for himself and other individuals in litigation that was of no benefit to the companies.

■  Mr. Carter transferred numerous assets of Debtors to himself, personally, with no basis for the transfers other than his own personal benefit.

■  Mr. Carter has mischaracterized transactions between himself and Debtor and has falsified company records.  He has variously labeled the same transactions as either debt or equity, depending upon his current personal needs.

10.

The transfers described herein and in the "pattern and practice" of behavior alleged demonstrates Mr. Carter's intent that the legitimate creditors of the Debtor would remain unpaid, while he committed the Debtors' limited assets to his own comfort, his own enrichment and his continued ability to draw monies from the Debtor far beyond its insolvency.

**Insolvency**

Carter Brothers Security Services, LLC Insolvency

11.

Under the facts of this case, the company's insolvency is both evidence of Mr. Carter's actionable intent under 11 U.S.C. § 548(a)(1)(A), as well as being part of the statutory elements of subpart (a)(1)(B), which is also alleged in the Trustee Complaint.  The Plaintiffs' forensic accountant has determined that CBSS was insolvent on a balance sheet basis from the first quarter of 2014 through the point when CBSS ceased doing business on or about June 1, 2016. Of course, from that point on, CBSS had no operations and no ability to fund obligations, rendering it insolvent on any measurable basis.

12.

From the first quarter of 2014, CBSS consistently lost monies, posting losses in the

millions of dollars in any given calendar year.  In audited financial statements[1] issued in 2014

and 2015, professional third party accountants noted the ongoing losses and cautioned that

without a consistent influx of new capital, CBSS would collapse.   Instead, Mr. Carter

systematically looted the company.

13.

John Carter maintained a façade of doing business in order to continue to pay for his own

luxury vehicles, memberships in exclusive clubs and continued to systematically loot CBSS of

assets.

14.

The current records in the Plaintiff's possession concerning the Carter Brothers Security

Services transfers to Defendant within the reach of the relevant statutes total $33,066.60 and

are as follows:

| 07/24/2014 | Check No. 3300 | $2,670.41 |
| 09/10/2014 | Check No. 3406 | $3,330.81 |
| 09/24/2014 | WIRE | $3,198.45 |
| 09/25/2014 | Check No. 3444 | $2,565.53 |
| 11/21/2014 | Check No. 3590 | $3,609.66 |
| 12/04/2014 | Check No. 3606 | $2,089.74 |
| 01/23/2015 | Check No. 3726 | $1,919.66 |
| 03/13/2015 | Check No. 3861 | $4,123.06 |
| 04/17/2015 | Check No. 3933 | $1,966.95 |
| 05/19/2015 | Check No. 3963 | $1,895.52 |
| 06/19/2015 | Check No. 4031 | $1,596.63 |
| 07/22/2015 | Check No. 4063 | $1,435.60 |
| 08/14/2015 | Check No. 4094 | $1,327.22 |
| 09/18/2015 | Check No. 4138 | $1,337.36 |

---

[1] The financial statements were consolidated covering both CBSS and D&N.

## THE TRANSACTIONS AND TRANSFERS

## COUNT I

## VOIDABLE FRAUDULENT TRANSFERS

## 11 U.S.C. §548; 11 U.S.C. §550

15.

Trustee incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 14 of this Complaint.

16.

On or within two years before the Petition Date, the Debtor made transfers of money or property to or for the benefit of Defendant, including the transfers described herein. Plaintiffs allege these transfers are avoidable as both intentionally fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A), and constructively fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B). The Trustee seeks to recover based upon a showing of intent to <u>hinder</u>, <u>delay</u> or <u>defraud</u>, which statement is made in the disjunctive. Under the facts of this case, all three results are the foreseeable outcome of the complained conduct.

17.

Transfers to this Defendant were for obligations of another person or entity. Upon information and belief there was no contract between Debtor and this Defendant.

18.

To the extent that Defendants accepted payment from Debtor based upon debt owed by another, Defendant did not act in good faith. Rather, Defendant had actual knowledge of the source of payments as they were rendered.

19.

Defendants knew or should have known that the transfers were fraudulent as to the

creditors of  CBSS.  Particularly with respect to payments by CBSS where there was no contract

between Defendant and CBSS.

20.

At all times relevant hereto, and as set forth in detail above, Debtor was insolvent within

the meaning of the Bankruptcy Code when the transfers were made, in that the sum of its debts

was greater than the fair value of its assets.  11 U.S.C. §101(32)(A).  Furthermore, the transfers

as outlined herein left the Debtor without operating capital necessitating further fraudulent

transfers in what was an ongoing pattern and practice of conduct.

21.

Trustee may avoid all transfers, including but not limited to those set forth

expressly in this Complaint, made from Debtor to Defendant on or within two years before the

Petition Date pursuant to 11 U.S.C. §548.

22.

Accordingly, Trustee is entitled to avoid and recover the transfers together with pre-

judgment interest from the date of the Trustee's first Demand and post-judgment interest as

allowed by law from the date of the entry of the judgment until paid.  11 U.S.C. §548.

## COUNT II

### FRAUDULENT CONVEYANCES UNDER STATE LAW
### O.C.G.A. §18-2-70, et. seq.; 11 U.S.C. §544; 11 U.S.C. §550

23.

Trustee incorporates by reference, as if fully set forth herein, the allegations contained in

Paragraphs 1 through 22 of this Complaint.  Like Count I, above, the Trustee seeks to avoid the

transfers identified herein as both actually and constructively fraudulent.  O.C.G.A. § 18-2-74(a)

and (b).  The Trustee has the standing of a creditor holding a judgment against the Debtor.  11

U.S.C. § 544(a).  The transfers identified herein are voidable under relevant state law by

creditors sharing the statutory standing of the Trustee.  11 U.S.C. § 544(b).

24.

On or within four (4) years before the Petition Date, the Debtor made transfers of money

or property to or for the benefit of Defendant, as described hereinabove.  The payments made by

the Debtor to Defendant are set forth herein by date, payor and amounts.  To the extent the

Trustee discovers the existence of additional transfers to Defendants within the four (4) years

prior to the Petition Date, the Trustee intends to recover all such transfers, and this Complaint is

not limited to those Transfers disclosed as part of the defined term.

25.

As set forth herein, Debtors received less than a reasonably equivalent value in exchange

for the transfers.  To the extent that Debtor paid the debts owed by other companies to which

they were not obligated, including but not limited to the payments set forth hereinabove, Debtor

received no value for the transfer.

26.

Defendant did not act in good faith.  Defendant accepted payments from companies that were not obligated to them on debts owed by another.

27.

Defendants knew or should have known that the transfers were fraudulent as to the creditors of the transferors.  Payments originated from companies that were not invoiced and from which payment was not due.

28.

At all times relevant hereto, Debtor was insolvent and unable to fund its obligations as they became due.  O.C.G.A. § 18-2-72.  Upon information and belief, Debtor was insolvent from 2014 onwards.  Upon further information and belief, the payments described herein interfered with the Debtor's ability to fund its own obligations and caused the Debtor to default on debts to its legitimate creditors.

29.

As set forth above, Debtor made the transfers with the actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date that the transfers were made, indebted.

30.

At the time Debtor made the transfers stated herein, Debtor intended to incur, or believed

or reasonably should have believed that the Debtor would incur, debts that would be beyond the

Debtor's ability to pay as such debts matured.

31.

At the time Debtor made the transfers, Debtor was engaged in business or a transaction,

or was about to engage in business or a transaction, for which any property remaining with the

Debtors was an unreasonably small capital.  Debtor received no consideration for the transfers, to

the extent that Debtor was not obligated on the subject debts and no claims existed to support the

payments.

32.

Trustee may avoid all transfers, including but not limited to those set forth in this

Complaint made from Debtor to Defendants on or within four (4) years before the Petition Date

pursuant to 11 U.S.C. §544 and O.C.G.A. §18-2-70, et. seq.

**COUNT III**

**MONIES HAD AND RECEIVED**

33.

Trustee incorporates by reference, as if fully set forth herein, the allegations contained in

Paragraphs 1 – 32 of this Complaint.

34.

Transfers and payments to this Defendant were for obligations of another person or entity. These payments represent money had and received and should be returned to Trustee as required by Georgia Law, OCGA 9-2-7.

**RESERVATION OF RIGHT TO AMEND**

35.

The Trustee reserves the right to amend this Complaint pursuant to a requested accounting as well as other discovery should facts be discovered to justify the assertion of additional claims, including but not limited to any and all claims arising under Title 11, U.S.C. or applicable state law.  This Adversary Proceeding is intended to address, and recover, all payments made to Defendant within the relevant time frames and Defendant is on notice of the fact that this Complaint is not limited to the specific transactions described herein.  To the extent that Defendant may identify another beneficiary, Trustee will seek to amend this Complaint to recover same under 11 U.S.C. § 550.

WHEREFORE, the Trustees pray that the Court enter judgment accordingly:

(a)    declaring that the transfers described herein to be voidable transfer pursuant to 11 U.S.C. § 544, 548 and O.C.G.A. § 18-2-70, et.seq.  recoverable  pursuant to 11 U.S.C. § 550 of the Bankruptcy Code;

(b)     award judgment against Defendant in the amount of $33,066.60 plus such additional sums as may be discovered during the litigation of this case;

(c)      awarding Trustee costs and reasonable attorneys' fees incurred in connection with this

action; and,

(d)      granting Trustee such other and further relief as may be just and proper.


On this date: July _7th_, 2020.



MACEY, WILENSKY & HENNINGS, LLP

/s/ Todd E. Hennings_____
Todd E. Hennings, Bar No. 347302

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
thennings@maceywilensky.com
Attorneys for Robert Trauner,
And Tamara Miles Ogier
Chapter 7 Trustees